# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| MARKEL INSURANCE COMPANY, | § § § | |
| Plaintiff, | § § | |
| AMTRUST INSURANCE COMPANY OF KANSAS, INC., | § § § | Civil Action No.: 4:19-cv-41-ALM-KPJ |
| Intervenor, | § § § | |
| v. | § § | |
| 2 RJP VENTURES, LLC, ANNE DROPP, and AMY SLABAUGH, | § § § § | |
| Defendants, | § § | |
| ANNE DROPP and AMY SLABAUGH, | § § § | |
| Counterclaim-Plaintiffs, | § § § | |
| v. | § § | |
| MARKEL INSURANCE COMPANY, | § § § | |
| Counterclaim-Defendant. | § § | |

## MEMORANDUM ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Came on for consideration the report of the United States Magistrate Judge in this action, this matter having been heretofore referred to the Magistrate Judge pursuant to 28 U.S.C. § 636.

On February 20, 2020, the Magistrate Judge held a hearing (the "Hearing") on multiple pending motions. On February 27, 2020, the Magistrate Judge entered proposed findings of fact and recommendations (the "Report") (Dkt. #87) that:

1. Plaintiff Markel Insurance Company's Fed. R. Civ. P. 12(b)(6) Motion and Supporting Brief (Dkt. #14) be denied;

2. Defendants/Counterclaimants' Motion for Summary Judgment (Dkt. #27) be granted;

3. Markel Insurance Company's Motion for Summary Judgment (Dkt. #34) be denied;

4. Markel Insurance Company's Motion for Default Judgment Against 2RJP Ventures, LLC (Dkt. #42) be denied as moot; and

5. AmTrust Insurance Company of Kansas, Inc.'s Motion for Summary Judgment (Dkt. #69) be granted.

On March 12, 2020, Markel filed objections to the Report (the "Objections") (Dkt. #90). Defendants/Counterclaimants Anne Dropp and Amy Slabaugh (the "Counterclaimants") filed a response to the Objections (the "Response") (Dkt. #92) on March 16, 2020. On March 19, 2020, Intervenor Plaintiff AmTrust Insurance Company of Kansas, Inc. ("AmTrust") filed a response to the Objections (Dkt. #93 at p. 2).[1] Also on March 19, 2020, Markel filed a Motion for Leave to File Reply (Dkt. #95). The Magistrate Judge granted the Motion for Leave (Dkt. #96), and the Court considers the Reply (Dkt. #95-1) as part of the objections record.

## RELEVANT BACKGROUND

The background of this case is set out in further detail by the Magistrate Judge in the Report and is not reproduced here in its entirety. In relevant part, this suit arose after piece of work equipment—a gasoline-powered portable inverter-generator—was left running inside of Ross Powell's work van. Ross and his father, Lyle, died from carbon monoxide poisoning from the fumes that emanated from the generator running inside of the van. Lyle Powell's two surviving daughters, the Counterclaimants, brought suit in state court against 2 RJP, which was defended by

---

[1] Counterclaimants filed a response opposing AmTrust's response only if the Court does not adopt the Report's finding of coverage under the policy issued by Plaintiff (Dkt. #94).

2

Markel, and received a large jury verdict. Markel then filed suit in this Court seeking a declaratory judgment that it has no obligation to defend or indemnify 2 RJP in the underlying state court action pursuant to the commercial general liability insurance policy ("Markel Policy") it issued to 2 RJP for the period of August 16, 2017, to August 16, 2018.

The parties' dispute concerns principally whether the Markel Policy applies to cover the incident in question. The Markel Policy contains an "Aircraft, Auto or Watercraft Exclusion," ("Auto Exclusion") (Dkt. 1-1 at 119-22, 131) which the parties agree applies in this case because the injury at issue arose out of the use of the 2 RJP Van. The parties disagree, however, about whether a certain exception (the "Operation Exception") to the Auto Exclusion applies. In particular, the Operation Exception provides that the Auto Exclusion does not apply to "[b]odily injury" arising out of "[t]he operation of any of the machinery or equipment listed in Paragraph f.(2) or f.(3) of the definition of 'mobile equipment'" (Dkt. 1-1 at 122, 131–33).

Counterclaimants argue that, because "generator" is a piece of machinery or equipment listed in Paragraph f.(3), the Operation Exception to the Auto Exclusion applies and thus the Markel policy covers the incident in question. Markel rejoins, arguing that the reference to "machinery or equipment listed in Paragraph f.(2) or f.(3) of the definition of 'mobile equipment'" must be read in conjunction with the prefatory language of Paragraph f. That prefatory language provides: "self-propelled vehicles with the following types of permanently attached equipment are not 'mobile equipment' but will be considered 'autos' (Dkt. 1-1 at 122, 131–33). Paragraphs f.(2) and f.(3) follow, listing out specific equipment, including "generators." Markel thus argues that the Operation Exception to the Auto Exclusion applies only to the extent that the generator in question was "permanently attached" to a "self-propelled vehicle." *See* (Dkt. 34 at 22). And because the generator in question was not permanently attached to the 2 RJP Van, Markel claims

that the Operations Exception does not apply and thus that the incident in question falls within the Auto Exclusion to the Markel Policy.

The Magistrate Judge issued a Report on February 27, 2020 (Dkt. #87) recommending denial of Markel's motion for summary judgement on the ground that the Operation Exception to the Auto Exclusion applies and brings the incident in question back within the coverage of the Markel Policy. The Magistrate Judge supported this position with three cases. *See Rakestraw v. S. Guar. Ins. Co. of Georgia*, 262 Fed. App'x 180, 182 (11th Cir. 2008); *Fed. Ins. Co. v. Tri-State Ins. Co.*, 157 F.3d 800, 803 (10th Cir. 1998); *Employers Ins. Co. of Wausau v. Lexington Ins. Co.*, No. EDCV 10-00810 VAP (DTB x), 2014 WL 4187842, at *10 (C.D. Cal. Aug. 19, 2014), *aff'd*, 671 F. App'x 552 (9th Cir. 2016). Specifically, the Magistrate Judge appealed to these courts' treatment of commercial general liability policies containing similar auto exclusions and operation exceptions to that contained in the Markel Policy. In those cases, the Magistrate Judge pointed out, the courts concluded that the equipment referenced in the policies' respective operation exceptions need not be "permanently attached" in order for the operation exceptions to apply. The Magistrate Judge applied that same reasoning in the Report and concluded that, because generators are listed in Paragraph f.(3) in the Markel Policy, the Operation Exception to the Auto Exclusion applies here.

*Markel's Objection*

Markel filed an objection to the Report, arguing that "[t]he R&R's recommendation to deny MIC's Motion for Summary Judgment is based on a misreading of the Operation Exception to the Auto Exclusion, and the legal support relied upon in the R&R inaccurately states the factual basis and holdings of two circuit court decisions" (Dkt. #90). Markel takes particular issue with the Report's reliance on *Rakestraw*, arguing that the issue giving rise to that suit did not actually

4

present that court with the question contemplated here—that is, whether certain unattached equipment triggered the Operation Exception. Rather, Markel argues, the question in *Rakestraw* was "whether the mere presence of an attached compressor on the truck that hit Rakestraw converted her injury from an auto collision into a claim covered under the Operation Exception" (Dkt. #90).

Markel also attempts to distinguish *Rakestraw* on the ground that the equipment at issue there was permanently attached to the vehicle, unlike the generator here. *See* (Dkt. #90) ("The equipment in *Rakestraw* was permanently attached, and the equipment was not even being used at the time of the injury."). Markel argues that *Federal Insurance Co.* and *Employers Insurance Co.* are distinguishable on this same ground (Dkt. #90).

Finally, Markel disagrees with the Magistrate Judge's distinction of *Salcedo v. Evanston Ins. Co.*, 797 F. Supp. 2d 769 (W.D. Tex. 2011), *aff'd*, 462 Fed. App'x. 487 (5th Cir. 2012) (unpublished), arguing that *Salcedo* is consistent with circuit case law and with the overall structure of the Markel Policy.

*Counterclaimants' Response*

Counterclaimants responded to the Magistrate Judge's Report and to Markel's objections thereto, arguing that the Magistrate Judge's interpretation of the Markel Policy and the applicability of the Operation Exception is reasonable, therefore obligating the Court to adopt that interpretation. *See Cent. Mut. Ins. Co. v. KPE Firstplace Land, LLC*, 271 S.W.3d 454, 461 (Tex. App. 2008). Counterclaimants argue further that the Magistrate Judge correctly relied on *Rakestraw*, *Federal Insurance Co.*, and *Employers Insurance Co.* because of how similar the policy language in those cases is to the language in the Markel Policy. Regarding *Salcedo*, however, Counterclaimants argue that it is distinguishable by pointing out that the *Salcedo* court

5

did not even reach the question whether that policy's operation exception applied since the court found that the vehicle in question was not an auto. *See* (Dkt. #92). Finally, Counterclaimants appeal to a recent Tenth Circuit case, *Carolina Cas. Ins. Co. v. Burlington Ins. Co.*, 2020 WL 948338, at *11 (10th Cir. Feb. 27, 2020), in which the court interpreted the liability policy's operation exception to its auto exclusion "with reference to paragraphs [6.b] and [6.c] alone, without incorporating any prefatory language," just as the Magistrate Judge did here (Dkt. #92). Because the Tenth Circuit in *Carolina Casualty* held that the equipment listed in the referenced paragraphs was "not fettered to an 'attached to' requirement," Counterclaimants contend that the equipment listed in paragraphs f.(2) and f.(3) need not be permanently attached to the vehicle in order for the Operation Exception to apply here. *See* (Dkt. #92).

**ANALYSIS**

A party who files timely written objections to a magistrate judge's report and recommendation is entitled to a de novo determination of those findings or recommendations to which the party specifically objects. 28 U.S.C. § 636(b)(1)(c); FED. R. CIV. P. 72(b)(2)-(3).

Although Markel attempts to distinguish the cases relied on in the Report, Markel's Objections are essentially the same arguments asserted in its briefing and at the Hearing. First, Markel's attempt to distinguish *Rakestraw* on the ground that it presented a slightly different factual scenario and legal question is misplaced. *Rakestraw* arose out of an auto accident in which Rakestraw's vehicle was struck by a pickup truck that had a fuel tank, air compressor, and toolbox permanently attached to its bed. *See Rakestraw v. S. Guar. Ins. Co. of Georgia*, 262 Fed. App'x 180, 181 (11th Cir. 2008). Rakestraw sued the owner of the pickup truck, who carried a commercial general liability insurance policy with a nearly identical auto exclusion and operation exception to the Markel Policy. *Id.* at 181–82. In affirming the district court's judgment that the

policy did not cover the incident in question, the Eleventh Circuit concluded that, because the injury did not arise out of the *operation of* the air compressor, but rather arose out of the operation of a self-propelled vehicle that contained the air compressor, the operation exception did not apply and the accident was excluded from coverage under the auto exclusion. *Id.*

Markel argues that *Rakestraw* is distinguishable because the injury there "had nothing to do with the equipment" but instead arose from an auto collision in which the vehicle causing the accident happened to be carrying equipment. *See* (Dkt. #90). And on this point Markel is correct. However, the Court is unpersuaded that this distinction makes the Report's reliance on *Rakestraw* misplaced.

As indicated in the Report, the Magistrate Judge relied on *Rakestraw* not because the facts of the case were identical to the facts before the Court, but because the *Rakestraw* court analyzed similar policy language. Though the Eleventh Circuit answered a slightly different legal question than that in the present case, its reasoning is still helpful here. Specifically, the Eleventh Circuit clearly reasoned that the correct way to interpret the language of the operation exception is to look to "injury arising from the operation of the [equipment], and *not* to injury arising from the operation of 'self-propelled vehicles . . . with permanently attached [equipment]." *Id.*

In other words, despite factual and legal differences between the present case and *Rakestraw*, the Report relied on *Rakestraw* only for its reasoning that the operation exception refers to the equipment *itself*, not the equipment insofar as it is permanently attached to a self-propelled vehicle.

Markel also reiterates the same arguments made in its briefing and at the Hearing that *Rakestraw*, *Federal Insurance Co.*, and *Employers Insurance Co.* should not be relied upon because they concern equipment that was permanently attached, unlike the generator at issue in

this case (Dkt. #90 at p. 7). But upon a close reading of *Rakestraw*, *Federal Insurance Co.*, and *Employers Insurance Co.*, it is clear that the respective holdings do not depend on whether the equipment at issue was permanently or temporarily attached. It is the decisions and logic of contract interpretation in each of the three decisions that the Report relies on.

Finally, Markel reiterated its argument that *Salcedo v. Evanston Ins. Co.*, 797 F. Supp. 2d 769 (W.D. Tex. 2011), *aff'd*, 462 Fed. App'x. 487 (5th Cir. 2012) (unpublished) supports its position and is in harmony with a correct reading of *Rakestraw*, *Federal Insurance Co.*, and *Employers Insurance Co.*. (Dkt. #90 at pp. 8–9). *See* (Dkt. #34 at pp. 22–26; Dkt. #78-1 at pp. 2–3). The Report thoroughly addressed this argument and its limitations, noting that the *Salcedo* court never reached the merits of the argument asserted in this matter (Dkt. # 87 at pp. 15–16). Indeed, the *Salcedo* court determined as a threshold matter that the asphalt plant was not an auto, preventing it from ever reaching the secondary question whether the operation exception was triggered.

Moreover, as noted in Counterclaimants' Response, recent case law further supports the reasoning set forth in the Report. In *Carolina Cas. Ins. Co. v. Burlington Ins. Co.*, Nos. 18-8071 & 18-8077, 2020 WL 948338, at *11 (10th Cir. Feb. 27, 2020),[2] the Tenth Circuit considered the identical auto exclusion and operation exception language as that in the Markel policy and the identical operations exclusion language found in the AmTrust auto policy. In that case, the court addressed the same contract interpretation question—whether the contract language requires that the mobile equipment at issue be permanently attached to a self-propelled vehicle. *Id.* The Tenth Circuit interpreted the auto exclusion and operation exception language in the same manner as the

---

[2] This opinion issued the same day as the Report.

Magistrate Judge did in the Report. The Tenth Circuit explained the following about its reading of the policy, which supports the conclusion in the Report:

> Burlington argues that the pump-operation exclusion cannot apply unless the pump is permanently attached to a self-propelled vehicle. To get there, Burlington asserts that paragraph 6.c. must be read subject to this earlier language in paragraph 6: "Vehicles not described in Paragraph 1., 2., 3. or 4. above, maintained primarily for purposes other than the transportation of persons or cargo. But self-propelled vehicles with the following types of permanently attached equipment are not 'mobile equipment' but will be considered 'autos[.]'" But this position disregards the policy's plain language excluding accidents "arising out of the operation of ... [a]ny *equipment listed* in Paragraph [6.c.]" (emphasis added). Pumps are listed in paragraph 6.c. And paragraph 6.c. is not fettered to an "attached to" requirement. So the pump qualifies for the operations exclusion. *See Fed. Ins. v. Tri-State Ins.*, 157 F.3d 800, 802–03 (10th Cir. 1998) (interpreting an identical exclusion and concluding that "it excludes any injuries that 'arise out of' equipment listed in either paragraph 6.b. or 6.c.[,]" such as pumps).

*Id.* at \*9 n.11 (internal citations omitted).

Markel filed a Reply to address *Carolina Casualty* (Dkt. #95). There, Markel observes correctly that the primary question was whether the auto exclusion in the liability policy at issue excluded coverage, and the Tenth Circuit held that it did not. Thus, as Markel points out, the Tenth Circuit was not *compelled* to reach the question whether the operation exception would apply. However, after considering the operation exception and paragraphs f.2 and f.3 of the policy in question, the Tenth Circuit noted that *if* the auto exclusion did apply, the operation exception would also apply to leave the defendant with a duty to defend. *Carolina Cas.*, 2020 WL 948338, at \*9. The Tenth Circuit then elaborated on this point in a footnote, explaining that the operation exception would apply despite the fact that the pump in question was not permanently attached to the vehicle. *Id.* at \*9 n.11.

Markel's main argument against relying on *Carolina Casualty* is that the Tenth Circuit did not technically reach the question whether the operation exception applied and, when it did discuss the operation exception, it did so in dicta and in a footnote. The Court understands Markel's

9

argument and agrees that the Tenth Circuit's discussion regarding the operation exception is not binding on this Court. The Court does, however, find the Tenth Circuit's logic on the point persuasive. To be sure, *Carolina Casualty* is a different case with different issues, but the Tenth Circuit did directly address an important issue that is before the Court. Thus, its analysis and consideration of identical policy language is at least worthy of consideration. Although *Carolina Casualty* is not binding precedent with respect to this case, it is further confirmation that the logic in the Report is sound, and further evidence that the same arguments merely re-urged by Markel as objections should be overruled.

Accordingly, the Court has made a *de novo* review of the Objections and is of the opinion that the findings and conclusions of the Magistrate Judge are correct and the Objections are without merit. The Court hereby adopts the findings and conclusions of the Magistrate Judge as the findings and conclusions of the Court.

## I. CONCLUSION

Based on the foregoing, the Court finds the Objections are overruled.

It is, therefore, **ORDERED** that:

1. Plaintiff Markel Insurance Company's Fed. R. Civ. P. 12(b)(6) Motion and Supporting Brief (Dkt. #14) is **DENIED**;

2. Defendants/Counterclaimants' Motion for Summary Judgment (Dkt. #27) is **GRANTED**;

3. Markel Insurance Company's Motion for Summary Judgment (Dkt. #34) is **DENIED**;

4. Markel Insurance Company's Motion for Default Judgment Against 2RJP Ventures, LLC (Dkt. #42) is **DENIED AS MOOT**; and

5. AmTrust Insurance Company of Kansas, Inc.'s Motion for Summary Judgment (Dkt. #69) is **GRANTED**.

**IT IS SO ORDERED.**

**SIGNED this 26th day of March, 2020.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE